[Cite as *Warrensville Hts. v. Parker*, 2022-Ohio-4507.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF WARRENSVILLE HEIGHTS,  :

    Plaintiff-Appellee,  :

                                        No. 111375

    v.  :

NATASHA O. PARKER,  :

    Defendant-Appellant.  :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  December 15, 2022

---

Criminal Appeal from the Bedford Municipal Court
Case No. 20-CRB-01381

---

### *Appearances:*

Marlene Ridenour, Warrensville Heights Chief Prosecutor, *for appellee.*

Joseph V. Pagano, *for appellant.*

CORNELIUS J. O'SULLIVAN, JR., J.:

{¶ 1} "Good fences make good neighbors."  Frost, Robert, *Mending Wall*, North of Boston (1914).

{¶ 2} Defendant-appellant, Natasha Parker, appeals her conviction for disorderly conduct, rendered after a bench trial.  She raises issues regarding speedy

trial and the sufficiency and manifest weight of the evidence. After a thorough review of the facts and the law, we affirm.

**Procedural and Factual History**

{¶ 3} On September 13, 2020, appellant was cited for disorderly conduct in violation of Warrensville Heights Codified Ordinances 509.03(A)(5), which provides that "[n]o person shall recklessly cause inconvenience, annoyance, or alarm to another by * * * [c]reating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender." On the eve of trial, appellant filed a motion to dismiss on speedy trial grounds, which the trial court denied. The matter proceeded to a bench trial on October 27, 2021.

{¶ 4} Appellant and the Nwankwos are next door neighbors living in Warrensville Heights that undisputedly do not get along, so much so that each has obtained a civil protection order against the other.

{¶ 5} Michael Nwankwo ("Nwankwo") testified that he has had numerous problems in the past with appellant, including her interfering with landscapers working in his yard, both before and after the Nwankwos obtained a protection order against appellant and her husband. On August 19, 2020, Nwankwo hired a landscaper, Matthew Howard, to do yardwork. In addition to being a landscaper, Howard also serves as Warrensville Heights City Council President. Nwankwo instructed Howard to trim bushes abutting appellant's property. As Howard began to trim the bushes, appellant's friend, Odyssey Cawthorne, approached Howard and

told him to stop trimming the hedge. At some point appellant came on the scene. Howard testified that appellant was "yelling and screaming very erratically * * * just really rude and nasty." Howard did not remember if appellant swore at him, but her language was "very offensive in nature."

{¶ 6} Trying to diffuse the situation, Howard offered to cut appellant's side of the bush "for free." Appellant declined, telling Howard that she had a protection order that prohibited him (Howard) from cutting her side of the bush. An argument ensued during which appellant sprayed Howard with a garden hose. According to Howard, his stomach, arms, front of his pants, and boots became saturated. Howard testified that appellant's demeanor was "angry, aggressive" and he felt threatened. Specifically, Howard testified:

> I was in a very emotionally-charged situation from someone who was behaving erratically. And you could tell by the three and a half steps that I took backwards that I was avoiding injury, that I was avoiding conflict, and I was making sure that I was ensuring my own personal safety * * * I backed up. I got out of immediate danger.

{¶ 7} Nwankwo testified that he did not tell Howard that appellant had a protective order against him before he directed Howard to trim the hedges because he did not think it was pertinent and did not believe that Howard's yardwork violated the protection order. Nwankwo further testified that he had a security camera on his property and that one of his cameras caught part of the incident. The video was played for the court and entered into evidence.

**{¶ 8}** Warrensville Heights Police Officer John Videc ("Ptl. Videc") responded to the scene.[1] He testified that he is very familiar with the involved parties, having responded to their houses "countless times * * * more than 10." Ptl. Videc took a statement from Howard and Cawthorne. He also tried to take a statement from appellant, but she would not answer her door or his phone calls; instead, appellant brought a five-page statement to the police department ten days after the incident.

**{¶ 9}** Cawthorne testified she repeatedly told Howard not to trim the bush because it belonged to appellant. According to Cawthorne, appellant only sprayed her own bushes with the hose, not Howard, but some water from the hose may have "sprayed up" and hit Howard. Cawthorne also testified that once she and appellant confronted Howard, he stopped trimming the hedge.

**{¶ 10}** After hearing all the evidence, the trial court determined, based on the testimony and the video, Howard was lawfully cutting the bush at the time appellant sprayed him with the hose, and the spraying created a condition that was "physically offensive" to Howard and was to prevent him from doing a lawful act. The court found appellant guilty of disorderly conduct and sentenced her to a $150 fine with $100 suspended, plus court costs.

---

[1] Ptl. Videc testified he has been a police officer with Warrensville Heights for 13 years and prior to that he served in the Marine Corps as a military police officer for four years.

{¶ 11} Appellant filed a notice of appeal and raises the following assignments of error for our review:

> I:  The trial court erred by denying Appellant's motion to dismiss for speedy trial.
>
> II:  The trial court erred when it denied appellant's motion for acquittal under Crim.R. 29 because the state failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support the conviction.
>
> III:  Appellant's conviction is against the manifest weight of the evidence.

## Law and Discussion

{¶ 12} In the first assignment of error, appellant argues that the trial court erred when it denied her motion to dismiss based on his right to a speedy trial.

{¶ 13} Appellant was charged with disorderly conduct, a minor misdemeanor.  R.C. 2945.71 provides that "a person * * * against whom a charge of minor misdemeanor is pending in a court of record, shall be brought to trial within thirty days after the person's arrest or the service of summons."

{¶ 14} When reviewing a speedy trial question, the appellate court must count the number of delays chargeable to each side and then determine whether the number of days not tolled exceeded the time limits under R.C. 2945.71.  *Lyndhurst v. Di Fiore*, 8th Dist. Cuyahoga No. 88654, 2007-Ohio-3538, ¶ 6, citing *State v. Borrero,* 8th Dist. Cuyahoga No. 82595, 2004-Ohio-4488.  The question of whether the trial court's ruling on a speedy trial issue was correct is a mixed question of law and fact.  The appellate court gives due deference to the trial court's findings of fact

so long as those findings are supported by competent, credible evidence. *Di Fiore* at *id.*, citing *Borrero* at *id.* Speedy trial statutes are strictly construed against the state. *Brecksville v. Cook,* 75 Ohio St.3d 53, 57, 661 N.E.2d 706 (1996).

{¶ 15} The date of the offense in this matter was August 19, 2020, and appellant was cited with disorderly conduct on September 13, 2020. Trial commenced on October 27, 2021. Appellant argues that the 30-day period should have started to run on August 19, 2020, or in the alternative, September 13, 2020. Appellant was not arrested, cited, or served a summons on August 19, 2020; therefore, her speedy trial did not begin to toll as of that date. We agree with the trial court's determination that the 30-day time began September 13, 2020, the date appellant was cited for disorderly conduct. In that event, appellant contends, the time waiver for her speedy trial was not entered until October 14, 2020, at the earliest, which was also past the 30-day period.

{¶ 16} On October 8, 2020, the court conducted a phone conference/hearing with the parties; this was appellant's initial appearance. Counsel for appellant appeared by phone and appellant appeared in person. The court noted that appellant had not yet waived her speedy trial time and, therefore, the case needed to be set for trial as soon as possible. The court suggested an October 22, 2020 trial date. Defense counsel indicated he was not available for that date and waived time from the hearing date forward. The hearing was held on the record.

{¶ 17} At the hearing on the motion to dismiss, counsel for appellant first argued that he never waived time. After the trial court played the recording from

the October 8, 2020 hearing, counsel switched gears, and argued that time was not waived until October 22, 2020, because that was the date the court wanted to set trial, and it was improper for the trial court to retroactively waive the time from October 8 until October 22, 2020. We are not persuaded by appellant's argument. Although the entry noting the time waiver was not filed until October 14, 2020, the waiver was entered on the record on October 8, 2020, by counsel, via phone.

{¶ 18} On appeal, appellant argues that she personally never waived time because she did not participate in the October 8, 2020 phone conference and there is no indication she waived her right to a speedy trial. The Ohio Supreme Court has held, however, that "for purposes of trial preparation, a defendant's statutory right to a speedy trial may be waived, with or without the defendant's consent, by the defendant's counsel." *State v. King*, 70 Ohio St.3d 158, 160, 637 N.E.2d 903 (1994), citing *State v. McBreen*, 54 Ohio St.2d 315, 376 N.E.2d 593 (1978). For the waiver to be effective, the waiver "must be express in writing or made in open court on the record." *King* at syllabus.

{¶ 19} The record reflects that appellant was present at the October 8, 2020 hearing and counsel appeared by phone. During the hearing, which was held on the record, counsel for appellant waived speedy trial time.

{¶ 20} Therefore, we agree with the trial court that a timely waiver was executed and there is no violation of appellant's speedy trial rights.

{¶ 21} The first assignment of error is overruled.

{¶ 22} In the second assignment of error, appellant argues that her conviction is not supported by sufficient evidence. In the third assignment of error, she claims the verdict is against the manifest weight of the evidence. We combine these assignments of error because they are interrelated.

{¶ 23} "A claim of insufficient evidence raises the question whether the evidence is legally sufficient to support the verdict as a matter of law." *State v. Parker*, 8th Dist. Cuyahoga No. 110716, 2022-Ohio-1237, ¶ 7, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry in a sufficiency challenge is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime existed beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. When making a sufficiency determination, an appellate court does not review whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supports the conviction. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25, citing *Thompkins* at *id.* Under a sufficiency challenge, witness credibility is immaterial; the appellate court must defer to credibility determinations of the trier of fact and only review issues of law. *Parker* at ¶ 7.

{¶ 24} A manifest weight challenge and a sufficiency of the evidence challenge are two distinct challenges to the evidence presented. *State v. Miree*, 8th Dist. Cuyahoga No. 110749, 2022-Ohio-3664, ¶ 30, citing *State v. Wilson*, 113

Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264. A challenge to the manifest weight of the evidence "'involves the inclination of the greater amount of credible evidence.'" *State v. Harris*, 8th Dist. Cuyahoga No. 109060, 2021-Ohio-856, ¶ 32, quoting *Thompkins* at *id*. Weight of the evidence examines "'the evidence's effect of inducing belief.'" *Harris* at *id*., quoting *Wilson* at *id*., citing *Thompkins* at 386-387. In reviewing a manifest-weight claim, the court must consider all the evidence in the record, the reasonable inferences drawn from it, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice * * *.'" *Harris* at *id*., quoting *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). Finally, the discretionary power to grant a new trial should be reserved for exceptional cases where "'the evidence weighs heavily against the conviction.'" *Thompkins* at *id*., quoting *Martin* at 175.

{¶ 25} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. Woodson*, 2d Dist. Montgomery No. 29394, 2022-Ohio-4005, ¶ 12, quoting *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. As a result, "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Citations omitted.) *Woodson* at *id*., citing *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

{¶ 26} Appellant claims that her conviction was not supported by sufficient evidence and was also against the manifest weight of the evidence because Howard's action in cutting her bushes violated the protection order she had against the Nwankwos, there was no evidence to support Howard's claim that he felt he was in danger, no evidence of fighting, and no evidence that a spraying of water was physically offensive.

{¶ 27} Nwankwo testified that he did not inform Howard of the protection order appellant had against him because he did find it germane to Howard's purpose, which was to cut his lawn and trim his hedges. He testified that he told Howard "not to trim on [appellant's] side of the property, stay over here on our side, cut the top and trim on our side only, the same I give to each of the contractors that come." Howard testified that he told appellant he was not going to cut her side of the bushes, but appellant was "rude," "nasty," and used "offensive" language towards him. Howard considered appellant's actions towards him threatening. This testimony is corroborated by the video that was entered into evidence.

{¶ 28} Having reviewed the record, weighing the evidence, reviewing all reasonable inferences, and examining witness credibility, we cannot conclude that the trial court lost its way and created such a manifest miscarriage of justice to warrant a new trial. The trial court heard the city's evidence, as well as the testimony of appellant's witness, and viewed the video of the incident. This is not the exceptional case that creates "such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered." *Thompkins*, 78 Ohio St.3d at

387, 678 N.E.2d 547. As a result of this finding, appellant's conviction is also supported by sufficient evidence.

{¶ 29} Appellant's second and third assignments of error are overruled.

{¶ 30} The trial court did not err in denying appellant's motion to dismiss because appellant waived her right to a speedy trial, her conviction was supported by sufficient evidence, and was not against the manifest weight of the evidence.

{¶ 31} This court does not have the luxury of Frost's ironic viewpoint, and therefore, we say, "Good people make good neighbors."

{¶ 32} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Bedford Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
CORNELIUS J. O'SULLIVAN, JR., JUDGE

ANITA LASTER MAYS, P.J., CONCURS;
MICHELLE J. SHEEHAN, J., CONCURS IN JUDGMENT ONLY